## CLEGG v MEHL

Ohio Appeals, 7th Dist, Monroe Co

No 298

T. J. Kremer, Woodsfield, for plaintiff-appellant.

Matz & Matz, Woodsfield, for defendant-appellee.

## OPINION

By BENNETT, J.

This is an action to have a deed, which on its face was a conveyance of an indefeasible estate in fee simple, declared to be a mortgage, and for such relief, as would make the equity in this conveyed property available to the creditors and heirs of plaintiff's decedent, H. H. Nelson Cain.

It appears that the decedent, who was a grand-uncle of the defendant, was in need of money in the fall of 1936, and borrowed $200.00 from the defendant. Several months later he gave the defendant a note for this sum and secured it by mortgage on his real property. On March 15, 1937, the decedent borrowed an additional $200.00 from the defendant and gave him a note, but not a new mortgage. On September 2, 1937, the decedent gave the defendant the disputed deed which, by its terms, conveyed to the defendant all of the real estate which he owned, as well as his live stock and some farm machinery.

The decedent died the following spring.

The plaintiff presented several witnesses as to the value of the property thus transferred. They testified that the property was worth in the neighborhood of $2000.00.

The plaintiff's case on its merits consisted of such inference as could be drawn from the difference between this value and the admitted $400.00 loan, and from such inference as could be drawn (1) from the fact that after the deed had been executed, the decedent had made a personal property tax return in which he listed this live stock and farm machinery as his own: (2) From the language of a letter from the defendant to Mr. Cain, after the deed had been executed, in which he referred to "your calves", and (3) from the further fact of a letter from Mr. Cain, to this defendant, after the conveyance, asking the defendant to rent the farm for him. It is argued that the fact of what is called

a gross inadequacy of price, plus payment of taxes by Cain, continued possession by Cain, use of all products of the farm, and stock by Cain, and these letters between the parties, indicating that Cain was considered the "owner" by each of them, "afford a strong presumption of that the vendor still holds the equity of redemption."

In the light of the discussion of the pleadings and the analysis of the evidence and of the law which is contained in the written opinion of the trial judge, with all of which we concur, it is unnecessary for us to elaborate upon these matters in detail. In summary of the evidence we may say that the plaintiff put the defendant on the stand for cross examination and asked him "What did he give you the deed for?", certainly thereby opening the mouth of the defendant to complete testimony on that subject. The defendant then testified that the decedent had seen him prior to making the deed and told him that things were not well with him, that he had no prospective means to ever pay him, that he could expect no help from his immediate family, that they "did not treat him right at home", that Mehl was the only one to whom he could look for help and that he was going to deed it all to him as payment of what he owed him, with the understanding that Mr. Cain could live there the rest of his life and that Mehl would then pay his funeral expenses and suitably mark his grave after his death. This was substantially corroborated by the testimony of a daughter of Mr. Cain. And the notary who drew the deed testified that Mr. Cain, himself, was the one who told him what to put in the deed and that he asked him to draw a deed, not a mortgage.

The defendant's evidence was to the effect, that the decedent's property was not nearly as valuable as believed by the plaintiff's witnesses, in our judgment, this is unimportant. The plaintiff did rely in large measure in argument on the so-called inadequacy of the price, but the controlling question is that of the intent of the grantor. He could make a deed of gift to Mehl, if he wished to do so. Inadequacy of price between strangers might indicate something about the nature of the transaction, but if Mr. Cain wished to deed the land in fee instead of mortgaging it, he could do so for any or no price. We feel that the evidence amply supports the contention that he did intend to deed it to the defendant and not to mortgage it. We certainly can not find that the plaintiff has convincingly shown the contrary.

The language of the two letters and the fact of the tax return, are not necessarily inconsistent with the defendant's testimony. Life tenants usually pay current taxes and there is nothing unusual in the idea that, if the transactions were of the sort described by Mehl, he would still be able to talk of the stock increase as "your" property. Nor would it be inconsistent with the claimed arrangement that any rent received from a tenant should go to Mr. Cain during his life.

It may be commented that, in addition to the testimony of Mehl, Mrs. Huggins and Mr. Dietrich, the testimony of Mrs. Frances Cain, lends some weight to the defendant's contention. She testified as to a conversation with her father-in-law, shortly before he died, in which the latter said that he wanted to make a will. It was argued that this proved that he thought he had something which he could dispose of by will. However, she testified he started this conversation "that he would like to see Landis Mehl, his nephew. That his business was not fixed up the way he wanted it to be." The net result of this testimony is simply that it indicated that Mr. Cain had had a change of heart, but nevertheless, recognized that it was then taken care of in a manner he wanted to have changed. He then died before he got in touch with Mehl or had it changed.

The defendant of course, by accepting the deed, has obligated himself to pay the funeral expenses and provide the markers. His failure to do so prior to final determination of this action, has been justified, by the fact that the action was brought.

Judgment is accordingly rendered for the defendant.

NICHOLS, PJ, and CARTER, J, concur.